Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

⑤ **FILED**

SMC
NP
NC      MAR 03 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# UNITED STATES DISTRICT COURT

for the

Northern District of California

San Jose Division

**C**

**25 02191 VKD**

Case No. _____

*(to be filled in by the Clerk's Office)*

TYGHE JAMES MULLIN

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

CITY OF MOUNTAIN VIEW, RAYMOND CLUTTER, DANIEL MILLER, ED HAMMON, RICKY
VALENZUELA, KEVIN GALLOWAY, FRANK EDWARDS

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

Jury Trial: *(check one)* ✓Yes ☐No

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| Name | Tyghe James Mullin |
|---|---|
| Address | 2464 South Bascom Ave, Apt. 5 |

| Campbell | CA | 95008 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| County | Santa Clara County |
|---|---|
| Telephone Number | (669) 324-3573 |
| E-Mail Address | Tymullin0708@gmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| Name | City of Mountain View, California |
|---|---|
| Job or Title (if known) | Municipal Corporation |
| Address | 500 Castro Street |

| Mountain View | CA | 94041 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| County | Santa Clara County |
|---|---|
| Telephone Number | (650) 903-6304 |
| E-Mail Address (if known) | city.clerk@mountainview.gov |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| Name | Raymond Clutter |
|---|---|
| Job or Title (if known) | Police Detective |
| Address | 1000 Villa Street |

| Mountain View | CA | 94041 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| County | Santa Clara County |
|---|---|
| Telephone Number | (650) 903-6344 |
| E-Mail Address (if known) | Police@mountainview.gov |

☑ Individual capacity    ☐ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

| | |
|---|---|
| Name | Ricky Valenzuela |
| Job or Title *(if known)* | Police Sergeant |
| Address | 1000 Villa Street |

| Mountain View | CA | 94041 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Santa Clara County |
| Telephone Number | (650) 603-6344 |
| E-Mail Address *(if known)* | Police@mountainview.gov |

☑ Individual capacity     ☐ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Frank Edwards |
| Job or Title *(if known)* | Police Officer |
| Address | 1000 Villa Street |

| Mountain View | CA | 94041 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Santa Clara County |
| Telephone Number | (650) 603-6344 |
| E-Mail Address *(if known)* | Police@mountainview.gov |

☑ Individual capacity     ☐ Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.     Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

This case arises from the actions of six veteran Mountain View police officers that encompasses an unlawful search and seizure, due process violations and other denials of constitutional protections, particularly under the Fourth and Fourteenth Amendments. Collectively, the officers engaged in extreme and outrageous conduct that also amounted to false imprisonment, false arrest, intrusion upon seclusion, negligence, fraud, conversion, intentional infliction of emotional distress and Bane Act violations.

C.     Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Tyghe James Mullin
2464 South Bascom Avenue, Apt. 5
Campbell, CA 95008
Tel: (669) 324-3573
Email: Tymullin0708@gmail.com

## PARTIES:

- Defendant No. 5
                     Name:              Daniel Miller
                     Job (Title):       Officer
                     Address:           1000 Villa St.
                                        Mountain View, CA 94041
                     County:            Santa Clara County
                     Telephone No:      (650) 603-6344
                     Email:             Police@mountainview.gov
                                        Individual and official capacity

- Defendant No. 6
                     Name:              Kevin Galloway
                     Job (Title):       Officer
                     Address:           1000 Villa St.
                                        Mountain View, CA 94041
                     County:            Santa Clara County
                     Telephone No:      (650) 603-6344
                     Email:             Police@mountainview.gov
                                        Individual and official capacity

- Defendant No. 7
                     Name:              Ed Hammon
                     Job (Title):       Officer
                     Address:           1000 Villa St.
                                        Mountain View, CA 94041
                     County:            Santa Clara County
                     Telephone No:      (650) 603-6344
                     Email:             Police@mountainview.gov
                                        Individual and official capacity

## STATEMENT OF CLAIM:

On March 22, 2023, the Mountain View Police Department, led by Detective Raymond Clutter, conducted an unauthorized search of Plaintiff's property using an Apple AirTag for tracking, without obtaining a valid warrant or the necessary consent. This unauthorized entry directly violated the Fourth Amendment protection against unreasonable searches and seizures (*Mapp v. Ohio*, 367 U.S. 643), as well as the California Constitution, Article I, Section 13, which similarly safeguards privacy and property rights. The employment of an Apple AirTag as a device to locate and enter private premises without prior judicial authorization raises serious privacy concerns. This action contravenes established principles of *Katz v. United States*, 389 U.S. 347 (1967), where the Supreme Court held that advancements in technology do not dilute protections under the Fourth Amendment regarding expectations of privacy. The delay in securing a contemporaneous affidavit for probable cause, contrary to California Penal Code § 1524, undermines the legality of the search by failing to substantiate an immediate need or evidence before proceeding. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court underscored the necessity for truthfulness in warrant affidavits, a requirement disregarded here. The arrest and search with the applicable warrant was said to have occurred on March 22, 2023, however, the date of the signed Probable Cause Affidavit is two months later, May 1, 2023. By entering Plaintiff's premises without legal justification, officers committed trespass, infringing on Plaintiff's proprietary rights and personal liberty. California Civil Code § 3333 entitles the Plaintiff to damages for

PLEADING TITLE - 1

such unauthorized intrusion, recognized as intentional misconduct disrupting the peaceful enjoyment of property. Defendants neglected fundamental procedural standards, such as activating body cameras and properly identifying themselves, which are vital for maintaining public trust and transparency. Such failures may suggest additional tortious intentions, revealing a pattern of negligence and disregard for departmental mandates. The officers failed to manage the gathered evidence within a reliable chain of custody, breaching California Evidence Code § 1400. This mismanagement raises questions about the evidence's integrity and potential bias in presenting manipulated findings. The unlawful and reckless actions of Mountain View Police caused Plaintiff significant emotional distress. Under California Civil Code § 1714, individuals are responsible for injuries caused by a willful lack of care, forming the basis for claiming intentional infliction of emotional distress against officers who exceeded conduct boundaries. Through this pattern of unconstitutional, negligent, and reckless actions, the Mountain View Police Department committed intentional torts against Plaintiff, violating constitutional rights, state statutes, and procedural norms. Pursuing damages and affirmative relief is critical to hold the department accountable for its conduct.

1. **Unauthorized Entry with Invalid Consent**

   Officer Raymond Clutter self-reported that the Mountain View Police Department, under his guidance, entered Plaintiff's property based on consent from a third party lacking the legal authority to grant such permission. Additionally, entry was made without a valid warrant or judicial confirmation, transgressing Fourth Amendment rights against unreasonable searches (*Mapp v. Ohio*, 367 U.S. 643) and privacy protections under California Constitution Article I, Section 13.

2. 2. **Lack of Lawful Identification and Authority**

   The officers entered the premises in official capacity absent any lawful identification markings or activated body cameras, contravening procedural requirements for law enforcement activities, further exacerbating privacy and procedural concerns.

3. **Absence of Judicial and Procedural Oversight**

   Operating without necessary warrants or judicial oversight, the actions acknowledged in self-reporting demonstrate a breach of judicial trust and legal process under California Penal Code § 1524, highlighting a failure to uphold legal standards and procedural integrity, as substantiated by *Franks v. Delaware*, 438 U.S. 154 (1978).

4. 4. **Unlawful Entry and Misconduct**

   The officers' unauthorized presence on private property without requisite legal authority constitutes a clear case of trespass, infringing Plaintiff's proprietary rights in violation of California Civil Code § 3333, and indicates egregious neglect in upholding lawful conduct.

   5. **Violation of Departmental Policies**

   By not activating body-worn cameras as mandated, the officers deviated from departmental enforcement policies. This breach undermines transparency standards and compounds the negligence inherent in their actions, suggesting a deliberate disregard for accountability.

5. **Infliction of Emotional Distress**

   These intentional and reckless actions have inflicted significant emotional distress on Plaintiff. Under California Civil Code § 1714, Plaintiff is warranted compensation for the distress caused by the officers' unlawful conduct and exceptional misjudgments.

PLEADING TITLE - 2

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Each of the Mountain View police officers were acting in their official capacity as law enforcement in the scope of their employment.

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

The events giving rise to this claim occurred primarily at my Public Storage facility, located at 1395 Mabury Road, San Jose, California 95133.

B.    What date and approximate time did the events giving rise to your claim(s) occur?

The events giving rise to this claim occurred on March 22, 2023, around 2:00 PM

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

On March 22, 2023, the Mountain View Police Department, led by Detective Raymond Clutter, conducted an unauthorized search of Plaintiff's property using an Apple AirTag for tracking, without obtaining a valid warrant or the necessary consent. This unauthorized entry directly violated the Fourth Amendment protection against unreasonable searches and seizures ("Mapp v. Ohio", 367 U.S. 643), as well as the California Constitution, Article I, Section 13, which similarly safeguards privacy and property rights. The employment of an Apple AirTag as a device to locate and enter private premises without prior judicial authorization raises serious privacy concerns. This action contravenes established principles of "Katz v. United States", 389 U.S. 347 (1967), where the Supreme Court held that advancements in technology do not dilute protections under the Fourth Amendment regarding expectations of privacy.

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

The officers' actions, as self-reported in official documents, demonstrate a clear intent to distress or, at the very least, a reckless disregard for the substantial likelihood of causing severe emotional harm. These actions included unlawful entry, unlawful detention without probable cause, and failure to adhere to procedural guarantees, behavior that transcends all boundaries of decency. According to authorities such as *Hughes v. Pair*, 46 Cal.4th 1035, such conduct must be extreme and outrageous criteria met when officers act beyond their legal authority with intimidation and threats. The documented traumatic impact of these actions, resulting in diagnosed psychological distress and ongoing emotional turmoil, vividly illustrates the causal link necessary to substantiate claims as per *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965. Lastly, the sustained severe distress is evidenced by professional diagnoses indicating psychological trauma, which no reasonable person should be expected to endure. Through their blatant disregard for the plaintiff's wellbeing and constitutional protections, the officers have rendered themselves liable under the established criteria for IIED, compellingly necessitating compensation and redress for the plaintiff's substantial suffering.
The police improperly seized my personal vehicle and failed to even log many of the items of value within my car. Evidence of misconduct and procedural failures are evident by further inspection of the CHp-180 vehicle report. As legal and registered owner of the 2006 BMW, I was not contacted or notified for the release, and staff provided untrue statements regarding the contacting of family who refused to pick up the vehicle. Actions and conflicting statements suggest dishonesty and concealment. To date, property damages consist of nearly $20,000.

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

The officers of the Mountain View Police Department are liable for damages by engaging in unauthorized searches and surveillance of private spaces without lawful warrants or probable cause, as self-reported in their statements. By unlawfully entering the storage unit and examining your personal items without your consent, the officers committed an intentional intrusion into your private affairs, a clear violation of your reasonable expectation of privacy. This conduct aligns with the legal definitions provided by the seminal case of *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998), where the court emphasized that intrusion upon seclusion does not require the publication of private material but focuses on the act of intrusion itself. Moreover, the Fourth Amendment reinforces the protection against such unwarranted invasions of privacy, underscoring the prohibition of physical entry into private domains without permission or legal authority. This statutory framework, along with case law, sets forth a clear precedent and legal protection against the unauthorized invasion of personal privacy spaces and unlawful search and seizures.

Therefore, the officers' actions, being highly offensive and unjustified, meet the necessary legal criteria for intrusion upon seclusion and other civil rights violations. Consequently, this positions the officers as liable for damages due to the emotional distress, reputational harm, and the infringement of privacy rights that resulted from such intrusion. The officers' liability encompasses both compensatory and potential punitive damages, aiming to address and rectify the significant breach of statutory and common law privacy protections.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         02/27/2025

Signature of Plaintiff

Printed Name of Plaintiff    Tyghe James Mullin

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number

E-mail Address

Tyghe James Mullin
2464 South Bascom Avenue, Apt. 5
Campbell, CA 95008
Tel: (669) 324-2573
Email: Tymullin0708@gmail.com

**COUNT 1:**

**U.S.C. Section 1983; Fourth Amendment (Judicial Deception Claims); 18 U.S.C. Section 242; 42 U.S.C Section 1985(3) Conspiracy; Fourteenth Amendment**

Detective Raymond Clutter and the officers of the Mountain View Police Department are liable for fraud, an intentional tort characterized by deceitful practices aiming to secure unlawful benefit or cause harm. The officers deliberately provided false statements and omitted critical information pertaining to the legitimacy of searches, property handling, and procedural compliance, knowing that these misrepresentations were untrue. Their actions exhibited a clear intent to deceive you, leading you to rely on their false assurances regarding legal procedures and your rights, which they recklessly disregarded. As you reasonably depended on these misrepresentations, expecting them to act within the confines of lawful enforcement, you consequently experienced substantial harm, including property loss, emotional distress, and infringement of personal liberties. The officers' self-admitted statements and actions suggest a pattern of intentional deceit, meeting the legal qualifications for fraud as outlined in cases such as *Small v. Fritz Companies, Inc.* and *Lazar v. Superior Court*, which emphasize the necessity of deliberate misrepresentation and resulting harm. By misleading you to detrimentally rely on their statements, the officers not only caused tangible damages but also breached foundational trust, thereby establishing liability under the fraud claim and entitling you to pursue compensatory and punitive remedies through the legal system. They misrepresented and/or omitted material information on the CHP-180 vehicle report and failed to provide notice to the legal and registered owner of 2006 BMW 330i impounded for evidence and misappropriated without notice to plaintiff, the rightful owner purchased only days before the arrest. A bill of sale, DMV registration records and the seller of the vehicle have been contacted and would each affirm plaintiff's testimony. More likely than not an isolated event for this type of incident for the involved officers.

**COUNT 2:**

**U.S.C. Section 1983; Fourth and Fourteenth Amendment; Fifth Amendment (Civil Asset Forfeiture)**

In the context of this case, the officers of the Mountain View Police Department may be liable for conversion, an intentional tort that involves the unauthorized exercise of control over another's property, effectively depriving the rightful owner of its use. The officers, by their own admission, wrongfully retained possession of your property, including Plaintiff's vehicle and other personal items, without lawful justification or due process. Despite Mullin's rightful ownership and consistent attempts to reclaim his property, they exercised dominion and control inconsistent with your rights, failing to provide notification or proper legal rationale for their retention. The elements of conversion were clearly met when the officers refused to return plaintiff's property, intentionally depriving you of its use and value. This wrongful act constitutes conversion as established in *Burlesci v. Petersen*, where the judicial emphasis is placed on unauthorized dominion resulting in deprivation. The resultant harm from this act includes not only financial loss due to the unreturned property but extends to aggravating emotional distress and disrupting personal affairs, for which the officers are liable. By operating beyond legal mandates and violating procedures required for rightful seizure and retention, the officers' actions align with conversion's criteria, thereby entitling Plaintiff to pursue recovery of losses and appropriate damages through legal proceedings.

**COUNT 3:**

**U.S.C. Section 1983; Fourth Amendment (unreasonable search and seizure); Fourteenth Amendment (Substantive Due Process)**

Officers of the Mountain View Police Department are liable for intrusion upon seclusion by engaging in unauthorized searches and surveillance of Plaintiff's private spaces without lawful warrants or probable cause, as self-reported in their statements. By unlawfully entering the storage unit and examining the personal items without consent, the officers committed an intentional intrusion into private affairs, a clear violation of reasonable expectation of privacy. This conduct aligns with the legal definitions provided by the seminal case of *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998), where the court emphasized that intrusion upon seclusion does not require the publication of private material but focuses on the act of intrusion itself. Moreover, California Civil Code Section 1708.8 reinforces the protection against such unwarranted invasions of privacy, underscoring the prohibition of physical entry into private domains without permission. This statutory framework, along with case

law, sets forth a clear precedent and legal protection against the unauthorized invasion of personal privacy spaces. Therefore, the officers' actions, being highly offensive and unjustified, meet the necessary legal criteria for intrusion upon seclusion. Consequently, this positions the officers as liable for damages due to the emotional distress, reputational harm, and the infringement of privacy rights that resulted from such intrusion. The officers' liability encompasses both compensatory and potential punitive damages, aiming to address and rectify the significant breach of statutory and common law privacy protections. Furthermore, the failure to activate body cameras and the lack of identifying insignia during the operation add to the suspicion surrounding the officers' actions, indicating potential disregard for transparency and accountability in law enforcement practices. This omission contravenes the expectations for official conduct and raises serious questions about the intent and legitimacy of the officers' presence and actions. This scenario mirrors the principles established in *Shulman v. Group W Productions, Inc.*, where the gravity of intrusion, regardless of publication, highlights the actionable nature of privacy breaches. Therefore, the officers' actions meet the criteria for intrusion upon seclusion, characterized by unwarranted and unchecked invasions amplified by procedural oversights. Their intrusion, facilitated by reliance on unchecked external input, resulted in a breach of privacy causing emotional distress and reputational harm, entitling you to both compensatory and potential punitive damages. Such actions contravene the established protective frameworks against indiscriminate searches and assert the need for remedial accountability and restitution for the privacy infringements inflicted. The infringement in this case began with the unwarranted reliance on information from an unknown complaining party whose credibility and motives were not properly vetted. This individual reported the presence of an item allegedly connected to a personal agenda or undisclosed motives. Instead of validating this claim through proper judicial channels, officers proceeded without a warrant, relying on unauthorized tracking via an Apple AirTag. This constitutes a serious breach of privacy, as unauthorized electronic tracking of personal locations without judicial oversight invades an individual's expectation of privacy and circumvents established legal safeguards, such as those underscored in California Civil Code Section 1708.8. The tracking mechanism employed without court approval or proper verification amplifies the egregious nature of the intrusion, suggesting an unjustified maneuver to collect data and invade personal spaces without consent. Such actions, intentionally conducted absent lawful justification, mirror the elements of intrusion upon seclusion and result in significant emotional distress and reputational harm to you. Consequently, the officers' actions warrant liability and entitlement to compensatory and potentially punitive damages to address the violation of privacy rights and ensure accountability for the gross misconduct enacted.

**COUNT 4:**
**U.S.C. Section 1983; Gross Negligence; Due Process Violations; Fourth and Fourteenth Amendment**
Negligence is a legal concept arising when someone fails to exercise a level of care that a reasonably prudent person would under similar circumstances, resulting in harm or damage to another. In the context of law enforcement, officers are expected to adhere to professional standards and protocols to prevent unnecessary harm. The conduct of the Mountain View police officers, as self-described in the officer's reporting, presents a basis for a negligence claim under the California Civil Code and related legal precedents. The Mountain View police officers are liable for negligence due to their failure to adhere to their duty of care, a fundamental obligation required of all law enforcement personnel. Officers owe the public a responsibility to act according to established legal standards and internal procedures, particularly during arrests or searches. In your case, this duty was breached when officers conducted improper searches, made unwarranted arrests, and failed to verify claims or secure necessary warrants, thereby violating procedural safeguards. Such breaches directly resulted in harm to you, including emotional distress, reputational harm, and loss of property, thereby establishing causation. California Government Code Section 815.2(a) holds that a public entity is liable for injuries caused by its employees within the scope of their duties, reinforcing the legal framework that supports your claim. Precedents such as *Scott v. County of Los Angeles*, which acknowledges officers' duty to act reasonably, and *Davidson v. City of Westminster*, which outlines the duty of care law enforcement must extend to the public, further substantiate this argument. The officers' neglect in communication, adherence to proper protocol, and mismanagement of evidence exemplify a departure from these duties, establishing a clear causal link to the damages suffered. This negligent behavior renders the officers liable, opening avenues for you to seek appropriate compensation for the resultant harms. The need for procedural integrity and the safeguarding of public rights through diligent law enforcement practices is underscored by this breach, mandating accountability and redress through the legal system.

**COUNT 5:**
**U.S.C. Section 1983; Fourteenth Amendment; Due Process Clause (Bane Act Violations)**

The Bane Act, codified under California Civil Code § 52.1, provides a powerful mechanism for individuals to seek redress when their constitutional or statutory rights are interfered with through threats, intimidation, or coercion. In your case, the Mountain View police officers' actions potentially constitute violations of the Bane Act, rendering them liable for damages due to their coercive behavior and infringement on Plaintiff's legal rights. The Bane Act's objective is to deter and remedy egregious conduct, particularly by those acting under the color of law, which contravenes civil liberties. In the present case, the officers' unwarranted search and seizure activities, underpinned by unauthorized tracking and surveillance, illustrate a disregard for legal processes and statutory protections, aligning with the misconduct targeted by the Act. The specific criteria for a Bane Act violation involve a showing of intentional interference or attempted interference with rights accompanied by threats, intimidation, or coercion. In instances where officers failed to procure a proper warrant or judicial oversight before engaging in electronic tracking via an Apple AirTag, their actions transcended mere procedural oversight and ventured into the realm of unlawful coercive conduct. This is exacerbated by their failure to authenticate claims from third parties, subsequently employing their authority to threaten legal action unsubstantiated by valid evidence or legal right, thus compounding the intimidation faced. Case law, such as *Jones v. Kmart Corp.*, 17 Cal.4th 329 (1998), reinforces that the Bane Act addresses conduct intending to suppress lawful rights through impermissible means, unaffected by the necessity of proving discriminatory animus. In circumstances like yours, where police officers, operating with implied legal authority, utilized coercive power absent lawful justification or adequate procedural compliance, the degree of coercion experienced aligns with actionable coercive conduct under the Act. Additionally, as recognized in *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004), the Act's application expands beyond discriminatory contexts to ensure comprehensive protection against right infringements by authoritative figures. The officers' misconduct, as admitted in their self-reports and evidenced by their actions, directly violated your constitutional and statutory rights through intimidation and coercion, underscoring their liability under the Bane Act. Consequently, this violation entitles you to seek compensatory damages, including statutory damages, exemplary damages, and attorney's fees, as remediation for the significant infringement upon your civil liberties. Engaging in such behavior not only contravenes established legal standards but mandates accountability and corrective action to preempt future abuses of authority and preserve the integrity of fundamental rights.

**COUNT 6:**
**U.S.C. Section 1983; Fourth Amendment; Unreasonable Search and Seizure**
In the context of this case, false imprisonment arises from the unlawful detention conducted by the officers of the Mountain View Police Department. This tort is grounded in the officers' intentional actions to confine plaintiff without legal authority. The officers detained plaintiff without a valid warrant or sufficient probable cause, causing a wrongful restraint on his liberty. Despite his repeated inquiries, they failed to produce legitimate reasons or legal documentation justifying the detention, which underscores the absence of lawful justification required for their actions. Significantly, Plaintiff was aware of this arbitrary confinement, which exacerbated the emotional distress and violation of personal freedom experienced during the process. The liability of the officers is further compounded because their actions did not align with legal standards and constitutional protections. By knowingly detaining without due process, they exposed themselves to claims for damages, including those for emotional distress, reputational harm, and loss of liberty. The potential for punitive damages exists, especially if their actions were accompanied by malice or reckless disregard for his rights. Furthermore, supervisory officers within the department bear liability as well, particularly if they endorsed, ignored, or inadequately supervised the conduct leading to Plaintiff's unlawful
detention, revealing systemic issues of negligent oversight or deliberate indifference that will likely be found with further discovery. Legal precedents such as Asgari v. City of Los Angeles emphasize these responsibilities and support claims against officers who act beyond their legal remit. Thus, the culmination of these unlawful acts positions the officers and their supervisors as liable parties for the alleged false imprisonment, entitling the option to pursue legal redress and compensatory relief through the court. The authorities underpinning the action of false imprisonment, particularly in a legal context involving law enforcement officers, are rooted in both statutory and case law. The Defendant officers are in violation of California Constitution, Article I, Section 13.

**COUNT 7:**
**U.S.C. Section 1983; Fourteenth Amendment; Due Process Clause (Intentional Infliction of Emotional Distress)**
In the case at hand, the officers of the Mountain View Police Department are liable for the intentional infliction of emotional distress based on their egregious and reckless conduct during their interactions with the plaintiff, Tyghe James Mullin. The officers' actions, as self-reported in official documents, demonstrate a clear intent to distress or,

at the very least, a reckless disregard for the substantial likelihood of causing severe emotional harm. These actions included unlawful detention without probable cause, and failure to adhere to procedural guarantees, behavior that transcends all boundaries of decency. According to authorities such as *Hughes v. Pair*, 46 Cal.4th 1035, such conduct must be extreme and outrageous—criteria met when officers act beyond their legal authority with intimidation and threats. The documented traumatic impact of these actions, resulting in diagnosed psychological distress and ongoing emotional turmoil, vividly illustrates the causal link necessary to substantiate claims as per *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965. Lastly, the sustained severe distress is evidenced by professional diagnoses indicating psychological trauma, which no reasonable person should be expected to endure. Through their blatant disregard for the plaintiff's wellbeing and constitutional protections, the officers have rendered themselves liable under the established criteria for IIED, compellingly necessitating compensation and redress for the plaintiff's substantial suffering. Medical records can verify the diagnosis of multiple psychological disorders post incident.

**Specific Statement of Damages (itemized):**

As a result of the officers' actions, Plaintiff suffered significant immediate and prospective damages, including:
**False Imprisonment and Arrest**: Plaintiff was unlawfully detained without proper legal authority, leading to emotional distress and reputational damage impacting professional and personal life ($56,000+).

**Intentional Infliction of Emotional Distress**: The extreme and outrageous conduct perpetrated by the officers has led to severe emotional and psychological harm, necessitating ongoing therapy, counseling and recent diagnosis of various mental health disorders (an amount to be determined).

**Conversion**: The wrongful detention and refusal to return Plaintiff's property, including:

-2006 BMW 330i (legal and registered owner; valued at $7,200)
- $1,442 in cash
-Zodiac Super Sea Wolf Chrono-Automatic Watch ($3,000)
-Tumi Alpha Bravo Backpack ($1,000)
-Ray-Ban Aviator Sunglasses x2 ($600)
-David Yurman 14k white gold chain ($2,000)
-California lottery winning scratchers inside pink zippered bag ($1400)
has caused significant financial loss and deprivation of use, leading to increased costs and loss of opportunity
(total loss to date at least $16,642 excluding opportunity costs)

**Fraud**: Misrepresentation by officers regarding the plaintiff's rights and the processing of property has contributed to unjust outcomes, necessitating legal intervention to rectify. Prospective Damages and Impact: As a result of these intentional actions, the plaintiff anticipates future damages encompassing:

- **Medical Treatment and Rehabilitation**: Continuous care and therapy for emotional trauma are anticipated, compounding future financial burdens.
- **Loss of Income and Career Opportunities**: Due to reputational harm and ongoing legal entanglements, future earning potential and career advancement are adversely affected.
- **Long-term Psychological Impact**: Continued emotional distress and anxiety expected to influence Plaintiff's quality of life and personal relationships.
The Plaintiff seeks compensatory and punitive damages to address these profound intrusions on rights and property, aiming for full redress and deterrence of future misconduct within the department in an amount to be determined by proof at trial.

No less than $1,500,000.00 for all detriment that has and will continue to be suffered.

## AFFIDAVIT RE PROBABLE CAUSE AND BAIL SETTING

THE AFFIANT, A PEACE OFFICER FOR THE STATE OF CALIFORNIA (AGENCY)   Mountain View Police Department

STATES THAT: ON (DATE) 03/22/2023 _____ (NAME) Mullin Tyohe _____ (CEN#) _____

(ARREST TIME) 1603 _____ (BOOKING TIME) 2050 _____ , WAS BOOKED AT THE SANTA CLARA
COUNTY JAIL ON THE FOLLOWING CHARGES:                                    CASE # 23-01519

| REF. NO. | ON-VIEW FELONY CHARGE(S) | ON-VIEW MISD. CHARGE(S) | SCHEDULED BAIL | |
|---|---|---|---|---|
| ✓ | PC 459 x4 | | | (DO NOT ADD IN BAIL |
| ✓ | PC 530.5(c)(3) | | | FOR OFFENSES THAT |
| ✓ | PC 470(d) x3 | | | ARE THE SAME |
| ✓ | PC 496(a) x8 | | | COURSE OF ACTION) |
| ✓ | H&S 11378 | | | |
| ✓ | H&S 11364(a) | | | |

( ) BAIL SET BY COURT BAIL SCHEDULE _____ TOTAL: $ _____
( ) BAIL SET BY MAGISTRATE _____ TOTAL: $ _____ Judge ____

AUTHORIZED SIGNATURE

### DIRECTIONS FOR COMPLETION

What facts led you to believe that the defendant committed the above felony/misdemeanor offense(s)? State reasons for initial contact/car stop. Describe actions of the defendant, addressing the **elements** of the offense(s), including symptoms of intoxication FSTs; Injuries and how inflicted. If you relied on third party information, describe incident and state who can establish the facts.

### REASONS FOR STOP/SEARCH/ARREST

On 03/22/2023 at approximately 1603 hours, Mullin was arrested for numerous outstanding warrants after MVPD Detectives followed an Apple AirTag belonging to ___ Brewer to the area of Mullin's BMW and storage unit, at _____. MVPD Detectives observed several items in plain view that belonged to Brewer (PC 459) and ___ Ghasserni (MVPD Case ___) as well as suspected methamphetamine (17.8 grams gross & 6 grams gross) (H&S 11378) and 5 pipes used to ingest methamphetamine (H&S 11364(a)). A search of Mullin's BMW and storage unit pursuant to a search warrant signed by the Honorable Griffin Bonini revealed items belonging to Brewer and Ghasserni. Tools were recovered and video surveillance that was later provided from ___ revealed Mullin had stolen a bicycle from a secured storage locker as well as maintenance tools from two separate maintenance workers within the complex (PC 459). A duffel bag containing documents with personal identifying information for numerous subjects was located inside the storage unit. MVPD Detectives were able to speak to 10 of the victims and confirm that the items had been stolen (PC 530.5(c)(3)). MVPD Detectives located a social security card belonging to ___ am with the original number removed and a new number typed onto the card (PC 470(d)) as well as a second social security card with both the name and numbers removed (PC 470(d)). MVPD Detectives also located an EBT card inside the duffel bag with the name removed (PC 470(d)). MVPD Detectives located numerous pieces of property and paperwork for several individuals (PC 496(a)). MVPD Detectives attempted to contact the additional 17 possible victims to see if their items were stolen. MVPD Detectives were able to contact 8 of the individuals and confirm that their items had been stolen (PC 496(a)). As of this writing the possible victims have not called back. MVPD Detectives located the suspected methamphetamine separated into two different areas as well as a baggie with residue left inside of it. Based on the amount of suspected methamphetamine as well as the baggies and separated nature of the controlled substance, I believe Mullin possessed the suspected methamphetamine for sales. Mullin remains in custody at Elmwood Correctional Facility after his previous arrest and I am adding the following charges based on the findings of the executed and completed search warrant. PC 459 x4, PC 530.5(c)(3), PC 470(d) x3, PC 496(a) x 8, H&S 11378, and H&S 11364(a).

### EACH APPLICABLE SECTION BELOW MUST BE COMPLETED:

1) Was the suspect armed? No ___ Describe weapon: N/A ___
2) Did the suspect resist arrest? No ___ Combative to officer(s)? No ___ Describe N/A ___ Fled only N/A
3) Assault victim info: Age N/A Ht N/A Wt N/A Sex N/A Relationship to suspect N/A
4) Injuries sustained by victim: None N/A ___ Minor N/A ___ Moderate N/A ___ Major N/A
5) Type of theft: Person N/A ___ Residence Yes ___ Commercial N/A ___ Other (describe) N/A
6) Property taken and approximate value: Numerous pieces of property (Unknown value) ___

7) Property recovered: None ___ Partial Yes ___ Full Recovery ___
8) Controlled substances involved: (Type) Suspected Methamphetamine ___ Presumptive test results N/A
   (Required information) $ Value _____ Quantity 17.8 & 6 grams gross ___
9) Threats to victim(s) or witness(es): including information leading you to believe that the defendant may injure the victim(s)/witness(es) (threats, prior violence, etc.) or may flee prior to a court appearance: _____

I declare under penalty of perjury, that the foregoing is true and correct.

Signature of Affiant/Badge Number

R. Clutter #14
Affiant/Print name

05/01/2023
Date

DISTRIBUTION: WHITE - Court  BLUE - Booking Jacket  CANARY - Classification  GREEN - OR  PINK - Arrestee

Form 435 Rev 12/07

**Police Report 9/15/23 000060**   435.25

## COMPLETING THE CIVIL COVER SHEET

Complete the form as follows:

I.  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.

    **Attorney/Pro Se Litigant Information.** Enter the firm name, address, telephone number, and email for attorney of record or pro se litigant. If there are several individuals, list them on an attachment.

II.  **Jurisdiction.** Under Federal Rule of Civil Procedure 8(a), pleadings must establish the basis of jurisdiction. If multiple bases for jurisdiction apply, prioritize them in the order listed:

    (1) *United States plaintiff.* Jurisdiction based on 28 U.S.C. §§ 1345 and 1348 for suits filed by the United States, its agencies or officers.

    (2) *United States defendant.* Applies when the United States, its agencies, or officers are defendants.

    (3) *Federal question.* Select this option when jurisdiction is based on 28 U.S.C. § 1331 for cases involving the U.S. Constitution, its amendments, federal laws, or treaties (but use choices 1 or 2 if the United States is a party).

    (4) *Diversity of citizenship.* Select this option when jurisdiction is based on 28 U.S.C. § 1332 for cases between citizens of different states and complete Section VI to specify the parties' citizenship. Note: Federal question jurisdiction takes precedence over diversity jurisdiction.

III.  **Cause of Action.** Enter the statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless jurisdiction is based on diversity. Example: U.S. Civil Statute: 47 U.S.C. § 553. Brief Description: Unauthorized reception of cable service.

IV.  **Nature of Suit.** Check one of the boxes. If the case fits more than one nature of suit, select the most definitive or predominant.

V.  **Origin.** Check one of the boxes:

    (1) *Original Proceedings.* Cases originating in the United States district courts.

    (2) *Removed from State Court.* Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. § 1441. When the petition for removal is granted, check this box.

    (3) *Remanded from Appellate Court.* Check this box for cases remanded to the district court for further action, using the date of remand as the filing date.

    (4) *Reinstated or Reopened.* Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

    (5) *Transferred from Another District.* Check this box for cases transferred under Title 28 U.S.C. § 1404(a). Do not use this for within-district transfers or multidistrict litigation (MDL) transfers.

    (6) *Multidistrict Litigation Transfer.* Check this box when a multidistrict (MDL) case is transferred into the district under authority of Title 28 U.S.C. § 1407.

    (7) *Multidistrict Litigation Direct File.* Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

VI.  **Residence (citizenship) of Principal Parties.** Mark for each principal party *only* if jurisdiction is based on diversity of citizenship.

VII.  **Requested in Complaint.**

    (1) *Jury demand.* Check this box if plaintiff's complaint demanded a jury trial.

    (2) *Monetary demand.* For cases demanding monetary relief, check this box and enter the actual dollar amount being demanded.

    (3) *Class action.* Check this box if plaintiff is filing a class action under Federal Rule of Civil Procedure 23.

    (4) *Nationwide injunction.* Check this box if plaintiff is seeking a nationwide injunction or nationwide vacatur pursuant to the Administrative Procedures Act.

VIII.  **Related Cases.** If there are related pending case(s), provide the case name(s) and number(s) and the name(s) of the presiding judge(s). If a short-form MDL complaint is being filed, furnish the MDL case name and number.

IX.  **Divisional Assignment.** Identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated." Note that case assignment is made without regard for division in the following case types: Property Rights (Patent, Trademark and Copyright), Prisoner Petitions, Securities Class Actions, Anti-Trust, Bankruptcy, Social Security, and Tax.

### MOUNTAIN VIEW POLICE DEPARTMENT

1000 VILLA ST    MOUNTAIN VIEW, CA 94041    650-903-6344

Page 3
23-01519

**SUPPLEMENT 1**

to his Apple Airtag, which was odd because it should be able to connect from approximately 200 feet without any obstructions. Brewer also advised that the radius had changed for the Apple Airtag and the most recent update was at 1043 hours. Brewer advised that the radius now extended into the Public Storage property.

Sergeant Valenzuela, Detective Edwards, and Detective Miller then came to the front parking lot of the Public Storage complex and I called into the property manager's office. The phone rang several times before a male came out of the residential door to the left of the leasing office. He advised that his girlfriend was out of the office and granted us access into the property to look for the stolen Apple Airtag. While we were walking onto the property, Brewer advised that it would be difficult for his Bluetooth on the Apple Airtag to connect with his cellular telephone due to the amount of metal around the complex.

We walked about 75 feet into the complex and Brewer remained focused on his cellular telephone and the application for his Apple Airtag. It should be noted that Sergeant Valenzuela, Detective Edwards, Detective Miller, and myself did not have our Police vests on with our radios or any other identifying markings. We all had our badges clipped to our belt or clipped to our pocket since we were acting in an under cover capacity and only looking for Brewer's Apple Airtag. Based on the time element between when Brewer's Apple Airtag last provided a location and the current time, we did not anticipate coming into contact with the possible suspect involved in the theft. Brewer then notified us that his cellular telephone had connected with his Apple Airtag and stated that it was, "Nearby."

Brewer advised that he was going to have the Apple Airtag make and audible noise so we could attempt to better determine its location. While walking I noticed there was an SUV parked along the north side of the aisle that had a male subject getting in and out several times attempting to secure ladders and other equipment. I also noticed that further down the aisle on the north side of the aisle was a blue/grey BMW sedan ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. The BMW was parked directly in front of a walkway that led to the next aisle with several additional storage units on either side of the walkway.

We heard an audible sound come from the walkway and as we approached a white adult male, later identified as Tyghe Mullin, came out of the walkway carrying a white banker box style box with black writing on the side and a clear plastic trash bag with what appeared to be mail inside. Mullin initially entered into the front passenger door of the BMW as I passed and entered into the walkway. Mullin then exited the BMW and picked up the white box and Brewer immediately stated, "That is my box," and followed up with, "I wrote that on the box last night as I was organizing."

 

| Prepared By: | | Date: | | Date: |
|---|---|---|---|---|
| 56279 | ▮▮▮▮▮ | 03/22/2023 | | 03/02/2023 |

Report 9/15/23 000013




**MOUNTAIN VIEW POLICE DEPARTMENT**

1000 VILLA ST    MOUNTAIN VIEW, CA 94041    650-903-6344

Page 4
23-01519

**SUPPLEMENT 1**

Brewer's Storage Unit with Boxes                    Located Box and Bag with Mail

**DETENTION:**

Based on Brewer's identification of his white box, I turned around and grabbed Mullin's left wrist with my left hand and just above his left elbow with my right hand. Detective Edwards adjusted his positioning and secured Mullin's right arm in a similar manner. Detective Miller grabbed the box from Mullin's hands and Sergeant Valenzuela presented his badge to Mullin by removing it from his person and holding it approximately one foot away from Mullin's face. Detective Edwards, Detective Miller, and myself all stated we were law enforcement while Sergeant Valenzuela escorted Brewer out of the area and back to his unmarked patrol vehicle. I advised Mullin that he was detained for an investigation into him being in possession of stolen property. Mullin spontaneously stated that he was only taking the garbage out. Detective Miller inquired if he worked for the Public Storage facility and Mullin stated, "No."

Mullin immediately stated that he was waiting for a "friend" to show up and was only taking out the trash. Mullin later advised that his friend was supposed to arrive any moment. We escorted Mullin to the opposite side of the aisle and requested he sit down while we were talking to him. Mullin complied with no further incident and then provided his name and date of birth verbally. Immediately as Mullin provided his name Detective Edwards and I realized that Mullin had slightly changed his appearance since the last time we had dealt with him and we asked how he had been lately.

While we were talking with Mullin, Sergeant Valenzuela returned with his black vest with "POLICE" on the front and back. Sergeant Valenzuela did not have his Axon Officer worn body camera affixed to his vest. I then retrieved my vest from my unmarked patrol vehicle and activated my Axon Officer worn body camera as I returned to where Mullin was. My Axon Officer worn body camera was activated for the remainder of this incident. Detective Edwards and Detective Miller then retrieved their vests so that we were each visibly identifiable as law enforcement officers.

**WANTS/WARRANTS:**

Detective Edwards conducted a records check of Mullin with MVPD Communications which revealed that he had an expired California Driver's License [redacted]) and currently had 6 outstanding warrants which were as follows:

1  1 $10,000 misdemeanor warrant (Docket Number: 22CR0083541) out of Fremont PD for a burglary violation

| Prepared By: | | Date: | Approved By: | | Date: |
|---|---|---|---|---|---|
| 56279 | CLUTTER, RAYMOND | 03-22-2023 | 54320 | VALENZUELA, RICKY | 05-02-2023 |

**Police Report 9/15/23 000014**





**MOUNTAIN VIEW POLICE DEPARTMENT**                     Page 1

googleusercontent.com  -  To exit full screen, press [Esc]

Summary

Various stolen items from this investigation, as well as other investigations, were located during an execution of a search warrant of a Public Storage Unit.

Attachments

None

Details

On 03/22/2023, I was working as a Detective in the Mountain View Police Department (MVPD) Crime Suppression Unit (CSU). At approximately 1500 hours, I responded to the Public Storage, at ██████ Road ██████, California, to assist Detective Cluter with this investigation.

Sergeant Valenzuela, and Detective Miller also responded to the Public Storage to assist.

Detective Cluter had drove the victim, John Brewer, to this location because an Apple AirTag stolen during this investigation showed a GPS ping near this Public Storage.

As we walked around the Public Storage facility Brewer's cell phone application received an active ping on the AirTag and then activated an audible alert on the AirTag. I immediately heard a beeping noise coming from a walkway leading towards storage unit ████. I walked towards the sound. I observed a blue/silver BMW (California license # ██████) parked next to the walkway's entrance and a male, later identified as Tyghe Mullin, was walking away from storage ████ with a handful of items. Detective Cluter ultimately arrested Mullin for various felony warrants.

Sergeant Valenzuela and I walked towards the sound of the audible alert which led us to storage unit number ████. Unit ████ door was opened approximately 2 feet and the locking mechanism appeared to have been pried open/damaged. The audible tone was echoing but sounded as though it was possibly coming from inside the unit. For safety reasons, Sergeant Valenzuela and I opened the storage locker the rest of the way, to ensure no one was hiding inside. I immediately observed a plastic bag containing a white crystalline substance on the ground with two approximately three inch long glass pipes with burned bulbous ends next to it. From my training and experience I know the plastic bag contained what I believed to be methamphetamine, in violation of HS 11377(a), and the glass pipes are used to smoke methamphetamine, in violation of HS 11364(a). I also observed what appeared to be various items that matched the description of Brewer's stolen property located inside unit ████.

Sergeant Valenzuela and I did not enter unit ████ as we were able to render it safe from standing outside of it.

Detective Cluter ultimately obtained a search warrant for unit ████ and the BMW and we later executed the search warrant. I took photographs of unit ████ and its contents and later uploaded them to Evidence.com. I

| Prepared By: | | Date: | Approved By: | | Date: |
|---|---|---|---|---|---|
| 56484 | EDWARDS, FRANK | 03/23/2023 | 54129 | VALENZUELA, RICKY | 03/27/2023 |

**Police Report 9/15/23 000005**



STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

## VEHICLE REPORT
CHP 180 (Rev. 7-13) OPI: 061

*A* EVIDENCE TOW *I*
DO NOT RELEASE
TOWED TO MVPD BACK LOT

NOTE: CHP 180 IS FURNISHED TO ALL PEACE OFFICERS BY THE CALIFORNIA HIGHWAY PATROL



| REPORTING DEPARTMENT | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE DELIVERED PERSONALLY | FILE NO. |
|---|---|---|---|---|
| Mountain View P.D. | 4311 | 03/22/23 1700 | | 23-01519 |

REMARKS
(LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTEE)

| OWNER'S NAME | ARRESTED (SECTION)? | REPORTED BY | CARGO (TYPE)? | VALUE $ |
|---|---|---|---|---|
| MULLEN, TYRONE 7/8/23 | ☒YES ☐NO WARRANTS | EDWARDS | ☐YES ☒NO | BILL OF LANDING ATTACHED |

Various items / $60°



SIGNATURE OF OFFICER TAKING REPORT     ID NO. 56604     SUPERVISOR     REQUIRED NOTICES SENT TO REGISTERED ☐YES ☐NO AND LEGAL OWNERS PER 22852 CVC?   3/24/23

*An Internationally Accredited Agency*

**Police Report 9/15/23 000054**




### MOUNTAIN VIEW POLICE DEPARTMENT

Page 6
23-01519

1000 VILLA ST    MOUNTAIN VIEW, CA 94041    650-903-6344

**SUPPLEMENT 1**

the device, the screen turned green with an arrow that pointed directly towards the black suitcase on the ground as Brewer held the cellular telephone flat with the screen facing towards the roof.

Once Brewer identified his items I drove him back to his residence and continued to MVPD to interview Mullin and author a search warrant for the storage unit as well as the BMW. Upon arrival to MVPD, I spoke with Officer Magana before going into room #1 of MVPD AIB.

**MIRANDA:**

Upon entry into room #1 of MVPD AIB, I noticed that Mullin had been provided with food and a soda which was mostly consumed. I also noticed that Mullin was no longer handcuffed and was seated on a bench at the table inside. I sat at the bench across the table and made sure my Axon Officer worn body camera was activated. I then read Mullin his Miranda Rights directly from a PD-138 (Miranda Card) and Mullin responded, "Yes," to all of the questions. I then requested that Mullin sign the card confirming that I documented his answers correctly and he did so without any further incident. I then conducted an interview of Mullin and he provided the following paraphrased statement:

**MIRANDA STATEMENT OF MULLIN:**

I asked Mullin about the items within the storage unit and he stated that he did not possess any of the items in the storage unit. Mullin stated that the storage unit belonged to his friend, "Stephen Burgner," who is approximately 40 years of age. It should be noted that Mullin had earlier provided the name, "Stephen Burgner," as the friend that he was waiting for at the storage unit. Mullin stated that Burgner owed him money, but Mullin was not exactly sure how he was going to get paid. Mullin stated that he figured Burgner was going to, "give him some stuff." Mullin claimed that Burgner owed him $9,000. Mullin then claimed that Burgner owes a separate unknown friend that amount of money and Mullin is collecting for the other friend. I inquired who that other friend was and Mullin stated, "that doesn't matter."

I asked Mullin how he had gotten the key to get into the storage unit and he stated, "I got it from him," to which I attempted to clarify that he was talking about Burgner and Mullin adjusted his story to say that he did not have a key. I asked Mullin how the storage locker became unlocked and he stated that he did not know and he was only there in his vehicle. Mullin then claimed that he was completely unaware of what storage unit I was talking about. I asked Mullin about the box that he was carrying and he stated that the box was only garbage.

When asked where Mullin got the box from he stated, "it was from right in front of where you seen me." Mullin then claimed that it was in front of the building and he was only taking the garbage out. I again asked if Mullin worked for the storage company and Mullin advised he did not but was waiting for someone.

I asked Mullin when he had last been in the City of Mountain View and Mullin advised that he had been there the day prior (03/21/2023). Mullin then stated that he had been there during the daylight hours. I inquired as to what Mullin was doing in Mountain View and he stated that he was there looking for Burgner. Mullin advised that Burgner resides in Mountain View. Mullin advised that Burgner resides in one of the apartment complexes

| Prepared By: | | Date: | Approved By: | | Date: |
|---|---|---|---|---|---|
| 56279 | CLUTTER, RAYMOND | 03/22/2023 | 54120 | VALENZUELA, RICKY | 05/02/2023 |

**Police Report 9/15/23 000016**